# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

GREATAMERICA LEASING CORPORATION,     Civ. No. 10-4631 (JRT/JJK)

   Plaintiff,

v.                                    **MEMORANDUM OPINION AND ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

ROBERT DOLAN and JEFF GRISSLER,

   Defendants.

---

Kevin J. Vissner, **SIMMONS PERRINE MOYER BERGMAN PLC**, 115 Third Street S.E., Cedar Rapids, IA 52401; David M. Wilk, **LARSON KING, LLP**, 2800 Wells Fargo Place, 30 East Seventh Street, St. Paul, MN 55101, for plaintiff;

Kelly A. Jeanetta, **MILLER O'BRIEN CUMMINS, PLLP,** One Financial Plaza, Suite 2400, 120 South Sixth Street, Minneapolis, MN 55402, for defendants.

Plaintiff GreatAmerica Leasing Corporation ("GreatAmerica") seeks a Temporary Restraining Order and a Preliminary Injunction against Robert Dolan and Jeff Grissler (collectively, "defendants") enjoining them from using any confidential information they obtained while working for Grandview Financial, Inc. ("Grandview") or from competing against GreatAmerica in the solicitation of financing opportunities in the beauty salon equipment sales market. For the reasons set forth below, the Court denies the motion.

## BACKGROUND

The set of contracts that are the focal point of this dispute came into being when Grissler, along with his brother Kevin Ruane, sold their beauty salon equipment financing business, Quest, to Grandview in January of 2004. Ruane eventually started a new company called Castelton in 2006 which, until recently, did not offer products similar to those of Grandview. Grissler accepted employment with Grandview as the Director of Sales for the Eastern Region and signed an initial employment agreement. Dolan had been an employee at Quest and also accepted a job with Grandview and signed an employment agreement.

On July 20, 2006 Grissler was promoted to Vice President of Sales for Grandview's Quest Resources Division and signed an Executive Employment Agreement ("EEA"). The EEA contained a confidentiality clause and a two-year post-employment non-compete clause. The EEA also included an assignment clause and included, as an addendum, a deferred compensation plan that would vest on December 31, 2010. The deferred compensation plan did not address the value of the deferred compensation plan if Grissler's employment ended involuntarily. Finally, the EEA contained a specific integration clause that expressly replaced the earlier employment agreement between Grissler and Grandview.

On October 10, 2010, Grissler sent Grandview President Brian Bjella a letter claiming Grandview was in material breach of his employment contract for failure to pay him the base wage of $4000 per month as specified in his EEA. Grandview terminated Grissler on October 19, 2010 without specifying if it was doing so with or without cause.

Subsequently, Bjella and Grissler signed a Settlement Agreement on November 3, 2010. The Settlement Agreement included the following language:

> WHEREAS, Grissler and Grandview entered into various agreements, including, but not limited to an Executive Employment Agreement, including a Deferred Compensation Plan; and
>
> WHEREAS, Grissler has left the employment of Grandview and Grandview and Grissler desire to settle as described herein.
>
> . . .
>
> 4) This Settlement Agreement constitutes the entire agreement between the parties and there are no other agreements or promises other than what are contained in this Agreement.

(Supp. Decl. of Brian Bjella, Ex. N, Dec. 8, 2010, Docket No. 19.)

The Settlement Agreement settled issues relating to base pay, commissions, and the deferred compensation plan. Specifically, Grissler released all claims "related to compensation, including but not limited to, claims for base pay, commissioners [sic] or claims for any further amounts from said Deferred Compensation Plan." (*Id.*).

Dolan worked for Grissler and Ruane at Quest prior to the sale to Grandview. At the time of that sale, Dolan signed an Employment Agreement ("EA") with Grandview that contained a confidentiality and non-solicitation clause. The EA did not contain a successor clause that allowed for assignment of the contract. The EA also identified Dolan's base wage at $4000 per month. Like Grissler, Dolan alleges that at some point in July of 2010, Grandview starting paying him less than his base salary, although he only objected to this drop in pay after he was terminated for cause. Dolan was terminated in

mid-October of 2010 for violating the confidentiality and non-solicitation clause by emailing himself Grandview's customer contact information in late September of 2010.

GreatAmerica purchased the assets of Grandview on October 5, 2010 and that it is a successor in interest to the employment agreements Grandview had with defendants. Subsequent to GreatAmerica's purchase of Grandview, Grissler and Dolan accepted positions at Castelton, selling beauty salon equipment financing within the same niche market as they had for Grandview. GreatAmerica seeks to enforce the non-competition and non-solicitation agreements that were in Grissler's and Dolan's employment agreements.

## ANAYLSIS

**I. Standard of Review**

In determining whether a party is entitled to preliminary injunctive relief, the Court considers "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). "[T]he question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* "Temporary restraining orders are extraordinary remedies, and the party seeking such relief bears the burden of establishing the *Dataphase* factors." *Lopez-Aldana v. Jarpmin*, No. 09-2479, 2009 WL 3202426, at *2 (D. Minn. 2009).

## II. Irreparable Harm

To succeed in an action for a preliminary injunctive relief, a movant must first show irreparable harm that is **not** compensable with money damages. *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 798 (D. Minn. 2010). Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Loss of reputation can be irreparable harm. *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.,* 336 F.3d 801, 805 (8th Cir. 2003) (loss of intangible assets such as reputation and goodwill constitute irreparable injury even though they are difficult to quantify); *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 426 (8th Cir. 1996) (loss of consumer goodwill can be irreparable harm).

The Court finds that GreatAmerica has failed to show irreparable harm necessary for preliminary injunctive relief. It claims that the niche market of beauty salon financing is so small and specialized that the loss of even a few customers constitutes irreparable harm. However, any customers lost can be identified and the amount of business gained from those customers can be quantified. Further, nothing in the record suggests that the loss of certain customers has damaged GreatAmerica's reputation or customer goodwill. Indeed, GreatAmerica is new to the beauty salon equipment financing business, and the Court does not find that the potential movement of customers warrants the "extraordinary and drastic remedy" of a preliminary injunction. *Lopez-Aldana*, 2009 WL 3202426, at *2.

### III. Balance Between the Parties

Defendants argue that preliminary injunctive relief would render them unable to earn a living, while GreatAmerica points to its dramatic drop in revenue after the departure of Grissler and Dolan. The Court finds the impact on the parties to be relatively equal on this prong. However, the Court notes that in Minnesota "[restrictive] covenants [in employment contracts] are looked upon with disfavor because their enforcement decreases competition in the marketplace and restricts the covenantor's right to work and ability to earn a livelihood." *Jim W. Miller Constr., Inc. v. Schaefer*, 298 N.W.2d 455, 458 (Minn. 1980). Application of this prong tips slightly in favor of defendants.

### IV. Probability of Success on the Merits

In evaluating the "probability of success on the merits," the Court need not discern with mathematical precision whether the plaintiff has a greater than fifty percent chance of prevailing. *Dataphase*, 640 F.2d at 113.

> The equitable nature of the proceeding mandates that the court's approach be flexible enough to encompass the particular circumstances of each case. Thus, an effort to apply the probability language to all cases with mathematical precision is misplaced. . . . [W]here the movant has raised a substantial question [as to irreparable harm] and the equities are otherwise strongly in his favor, the showing of success on the merits can be less. . . . [W]here the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation.

*Id.* (footnotes omitted). Further, the plaintiff need not demonstrate a probability of success on each claim. *See e.g.*, *Anheuser-Busch, Inc. v. VIP Products, LLC*, 666 F. Supp. 2d 974, 981-82 (E.D. Mo. 2008).

A. Grissler

The success of GreatAmerica's claims against Grissler will likely depend on whether the Settlement Agreement constituted the full and total agreement between Grissler and Grandview and therefore was an integration of all previous contracts between the two. The Minnesota Supreme Court has discussed integration in contracts and articulated the following rule to determine if a contract is a complete integration of the parties' intentions:

> A determination of whether the written document is a complete and accurate "integration" of the terms of the contract is not made solely by an inspection of the writing itself, important as that is, for the writing must be read in light of the situation of the parties, the subject matter and purposes of the transaction, and like attendant circumstances.

*Bussard v. College of St. Thomas, Inc.*, 200 N.W.2d 155, 161 (Minn. 1972). In cases where the writing contains a merger clause, however, the Minnesota Supreme Court has noted that "[a] merger clause establishes that the parties intended the writing to be an integration of their agreement." *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312 (Minn. 2003).

GreatAmerica argues that the Settlement Agreement does not integrate and thus supersede the EEA since the earlier employment agreement between Grissler and Grandview had a more detailed integration clause, and the purpose of the Settlement

Agreement was solely to address the deferred compensation clause of the EEA. Essentially, GreatAmerica argues that the merger clause does not represent an intention for a full integration since the "situation of the parties, the subject matter and purposes of the transaction, and like attendant circumstances" point to the opposite conclusion. *Bussard*, 200 N.W.2d at 161. However, given the existence of a merger clause, integration is presumed. *See Arizant Holdings Inc. v. Gust*, 668 F. Supp. 2d 1194, 1202 (D. Minn. 2009) (concluding that subsequent agreement severing employment abrogated prior confidentiality agreement through merger clause). Further, in light of Minnesota's scrutiny of non-compete agreements in employment contracts, the merger clause holds even more weight in the consideration of the enforceability of the non-compete covenant. *See Jim W. Miller Constr., Inc.*, 298 N.W.2d at 458.

Here, the integration clause states: "there are no other agreements or promises other than what are contained in this Agreement." Even if the Court were to consider this clause ambiguous and evaluate the contract in light of the "situation of the parties, the subject matter and purposes of the transaction, and like attendant circumstances" the likelihood of success on the merits would still counsel against preliminary injunctive relief. The Settlement Agreement covered not just the deferred compensation plan in the addendum to the EEA, but also wage and commission disputes from the main agreement. The breadth of the Settlement Agreement, and the fact that Grissler had raised a breach of contract issue prior to his termination and then released all claims in the agreement, all weigh towards finding the Settlement Agreement was a full integration of the parties' intentions. At this early stage of the case, and on a limited record, the Court questions

- 8 -

whether the non-compete covenant in the EEA is enforceable. As a result, at this stage, the Court finds that GreatAmerica has not shown a likelihood of success on the merits of this claim.

### B. Dolan

The success of GreatAmerica's claims against Dolan will likely depend on whether the employment contract between Dolan and Grandview was assignable to GreatAmerica upon its purchase of Grandview's business. In Minnesota, a non-compete clause may be assignable. *Saliterman v. Finney*, 361 N.W.2d 175, 178 (Minn. Ct. App. 1985). "However, whether a particular covenant is assignable, or was effectively assigned, depends on the language of the contract and the circumstances of the case." *Guy Carpenter & Co., Inc. v. John B. Collins & Assocs., Inc.,* No. 05-1623, 2006 WL 2502232, at *4 (D. Minn. Aug. 29, 2006).

In *Saliterman*, the Minnesota Court of Appeals noted that the issue of the assignability of a restrictive covenant in employment was an issue of first impression in Minnesota. 361 N.W.2d at 177. As a result, the court relied on two out-of-state cases to determine that a restrictive covenant was assignable. In *Torrington Creamery v. Davenport*, the Connecticut Supreme Court found that a non-compete was assignable since the successor had purchased the "business, together with all the good will." 12 A.2d 780, 782 (Conn. 1940). However, the restrictive covenant in that case anticipated the potential sale of the business and included a successor clause.

> [I]n the event that [defendant's] employment is terminated for any cause, he will not thereafter for a period of two (2) years after leaving the same

> employment solicit orders, directly or indirectly, from any customers of the Party of the First Part, or **those of its successor** if any, for such products as are sold by the Party of the First Part, **or its successor**, either for himself or as an employee of any person, firm or corporation.

*Id.* (alterations omitted) (emphasis added). In the second case considered by the *Saliterman* court, *Safier's, Inc. v. Bialer*, 93 N.E.2d 734, 735 (Oh. Comm. Pl. 1950), the covenant also contained a successor clause and further was negotiated and signed in contemplation of the imminent sale of the business.

The Court is also aware of the enforcement of an assigned non-compete without a successor clause in *BFI-Portable Servs., Inc. v. Kemple*, No. C5-89-1172, 1989 WL 138978, at *2 (Minn. Ct. App. Nov. 21, 1989). However, in that case, the defendant had gone to work for the successor for approximately a year after the sale of the business and had also signed a non-compete agreement with the successor that the court found non-enforceable due to a lack of independent consideration. *Id.* In the instant case, Dolan never went to work for GreatAmerica and his non-compete agreement contained no successor clause. As a result, the Court finds distinguishable the cases holding a non-compete clause to be assignable. Instead, the Court is guided by the principle that in Minnesota, employment covenants are to be given narrow construction. As a result, "where the contract does not provide for assignment, a Minnesota court . . . would likely construe the language of the contract against the employer and find any assignment void." *Inter-Tel, Inc. v. CA Commc'ns, Inc.*, No. 02-1864, 2003 WL 23119384, at *4 (D. Minn. Dec. 29, 2003). Therefore, again on a limited record, the Court finds that

plaintiff has not at this time demonstrated a likelihood of success on the merits of the claim against Dolan.

## V. Public interest

The public interest factor is balanced. Plaintiff argues a public interest in enforcement of valid contracts. Defendants argue a public interest in fair competition. Neither of these arguments outweighs the other.

A preliminary injunction is a drastic measure. Here, the Court finds it likely that plaintiff's harm is compensable through money damages and that plaintiff has not made a sufficient showing of a likelihood of success on the merits to warrant application of extraordinary relief.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction [Docket No. 5] is **DENIED**.

DATED: January 31, 2011　　　　　　　　　____s/ John R. Tunheim____
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　United States District Judge